<u>Attorneys for Plaintiff</u>
Andrew G. Celli, Jr., Esq.
David Berman, Esq.
Andrew J. Shubin, Esq.
Kathleen Yurchak, Esq.

<u>Attorneys for Defendant</u>
David J. MacMain, Esq.
Matthew S. Polaha, Esq.

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYLVESTER OSAGIE, as Representative of the Estate of Osaze Osagie, Decedent<br>Plaintiff, | ) ) ) ) | CASE NO. 4:20-CV-02024 |
| v. | ) ) | JUDGE BRANN |
| BOROUGH OF STATE COLLEGE, M. JORDAN PIENIAZEK, CHRISTOPHER HILL, KEITH ROBB, and CHRISTIAN FISHEL<br>Defendants. | ) ) ) ) ) | |

## JOINT CASE MANAGEMENT PLAN

<u>Instructions</u>:   In many cases there will be more parties in the action than there are spaces provided in this form.   Each party shall provide all requested information.   If the space on this form is not sufficient, the form should be retyped or additional pages attached.

No party may submit a separate Case Management Plan.   Disagreements among parties with respect to any of the matters below shall be set forth in the appropriate section.

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case

Management Plan.

## 1.  Principal Issues

###   1.1    Separately for each party, please give a statement summarizing this case:
###         By plaintiff(s):

On March 19, 2019, Sylvester Osagie, Ph.D.—a Penn State University administrator and professor—asked the State College Police Department ("SCPD") to help him find and secure treatment for his missing 29-year-old son, Osaze Osagie, who was then suffering a serious mental health crisis.    Dr. Osagie feared that his typically quiet, religious, and gentle, autistic son, who suffered from schizoaffective disorder, had stop taking his medications.   He was concerned that he was unable to find Osaze.   His concern turned to alarm after Osaze called to tell him that he was going to die and then texted him that there would be trouble with the police "in a little bit," that he was "fast approaching deep sleep . . ." and that "any poor soul whose life I take today, if any poor soul at all, may God forgive his sins if he has any."

Dr. Osagie provided the State College Police with as much information as he had about his son's condition, whereabouts, and frame of mind.   On the evening prior to the shooting, Dr. Osagie provided the police with Osaze's text messages, as well as information about his mental health history, diagnosis, treatment providers, and medication issues.   He told the police that Osaze had recently called to tell him

2

he was going to die and had sent a similar text message to one of his treatment providers.

Dr. Osagie made the decision, along with the police, to seek an involuntary mental health commitment and, with the help of police, he petitioned for and obtained a so-called 302 warrant to secure medical and psychiatric treatment for Osaze.   He spent the remainder of the evening and the next day looking for Osaze. Throughout the evening of March 19, 2019, and the early morning of the 20th, Dr. Osagie and the SCPD remained in contact as they both searched for Osaze.

The SCPD night shift patrol lieutenant provided the 302 warrant and supporting petition, the text messages, and other critical background information available to the day shift patrol lieutenant.   That lieutenant, in turn, briefed and assigned a detective and a day shift patrol officer to take the lead in serving the 302 warrant and working with Dr. Osagie to safely locate Osaze so that he could get the medical attention he so desperately needed.

Responding to critical mental health incidents requires highly specific, voluntary training, and a rigorous officer selection process, including "fitness" screening.   Notwithstanding this foundational principle, the SCPD required all of its officer to respond to critical mental health incidents.   In Osaze's case, instead of dispatching the fully briefed and assigned detective and patrol officer, the SCPD dispatched Patrol Officer M. Jordan Pieniazak, who they knew to be mentally

unstable and violent.   The SCPD knew that Pieniazak had been engaging in alcohol-fueled acts of domestic violence which included the threatening use of a firearm. Days before Pieniazak shot and killed Osaze, he had left a rehab facility, began drinking again and was acting erratically.   Although the SCPD knew that Pieniazek was unfit for duty, they assigned him to take the lead in responding to Osaze's high stress crisis situation.   On the third day after he returned to duty, Pieniazek shot and killed Osaze in the hallway of his apartment.

Not surprisingly, when interacting with Osaze, Defendant Pieniazek failed to apply standard police training to de-escalate and/or use less lethal options before killing Osaze Osagie.   Inconceivably, Defendant Pieniazek neither had nor was given *any* of the critical background information about Osaze; he did not review the readily available averments and historical narrative laid out in the 302 petition; he knew nothing of the "suicidal" text messages and other suicide threats, Osaze's mental health history or diagnosis; and he was not informed that Osaze's father was nearby and ready to assist in communicating with and helping his son.

Although Defendant Pieniazek knew that a mental health provider with knowledge of Osaze's circumstances was available to assist, the only effort he took to ascertain information was to ask the dispatcher to ask the mental health worker who had just reported seeing him walking toward his apartment from a grocery store, what Osaze was wearing and the direction he was walking.

4

Upon his arrival at Osaze's address, Defendant Pieniazek circled his police vehicle around the building awaiting the arrival of backup officers.   Two other SCPD officers—Defendant Christopher Hill and Defendant Keith Robb—also responded to Osaze's home address.   Although Defendant Hill and Defendant Robb knew more about Osaze and the circumstances at hand than did Defendant Pieniazek, neither assumed control of the situation, shared what they knew with Defendant Pieniazek, nor implemented or even suggested that they devise a plan to facilitate their contact with Osaze.   Instead, Defendant Hill and Defendant Robb deferred completely to Defendant Pieniazek, despite his complete lack of knowledge regarding any of the available, detailed, and critical facts regarding Osaze's perilous circumstances.

Inexcusably, the SCPD, as a whole, took no steps to provide information relating to the potentially volatile circumstances to Defendant Pieniazek before he undertook to confront and detain Osaze.   Defendant Pieniazek determined that the encounter—whose purpose was to involuntarily apprehend an individual in a documented mental health crisis that by definition, involved a "clear and present danger" to himself or others, and who had expressed both suicidal and homicidal ideations—amounted to a "routine" call that did not require him to seek background information, which were readily available from a variety of sources, or to plan the confrontation.

5

The three responding officers did not discuss what they would do when they got to the apartment.   They had no plan for how they would convince Osaze to accept help, and they had no plan for avoiding or minimizing the risk that deadly force would need to be applied in an encounter with him.   They also had no plan for involving a mental health worker, despite the fact that SCPD policy required them to do so.   Solely because of the happenstance of Defendant Pieniazek being closest to Osaze's apartment at the time the dispatcher requested assistance from the field, the SCPD, by way of its dispatcher, placed Defendant Pieniazek in charge of leading the confrontation and taking Osaze into custody.

Defendant Pieniazek decided, in contravention of fundamental critical incident training principles, to surprise Osaze, much as he would approach serving a search warrant on a drug trafficker or arresting a burglar.   Following Defendant Pieniazek's lead, Defendant Hill and Defendant Robb parked their cars down the street from the apartment building to remain hidden from Osaze's view.   Defendant Pieniazek led the group into the building and down a narrow set of steps.   He progressed into a tight hallway which the officers knew, from previous calls (unrelated to Osaze's case), would provide no opportunity to de-escalate or retreat. Defendant Pieniazek banged on Osaze's door and did not announce his presence. He covered the peephole on the front door and sought to deceive Osaze, a severely mentally ill man known to be paranoid and delusional into granting the officers

access.   Defendant Pieniazek pressed Osaze to leave his apartment even after he told the officer that he did not want to.   When Osaze reacted to police presence and pressure exactly as he had threatened to do, Defendant Pieniazek's shot Osaze multiple times and killed him.

Osaze's death was the result of systematic failings by the Borough of SCPD to meaningfully implement and enforce common-sense policies and practices to protect the rights of people with mental health disabilities during encounters with the police.    These failures led directly to and caused Osaze's tragic death.   Osaze's family brings this lawsuit to remedy the violation of Osaze's civil rights by the Borough of State College, the SCPD, and the Defendants Pieniazek, Hill, Robb, and Fishel whose conduct resulted in Osaze's senseless death.

### By defendant(s):

The basis of the Complaint and the Amended Complaint surround the events leading-up to the afternoon of March 20, 2019 at approximately 2:00 p.m. when officers of State College Police Department ("SCPD") attempted to serve a mental health commitment warrant on Plaintiff's decedent, Osaze Osagie ("Osaze") that ultimately turned fatal when the SCPD officers were forced to defend themselves from Osaze's charge with a knife.

The events began in the evening on March 19, 2020, when Plaintiff, Dr.

Osagie requested SCPD assist in locating Osaze, after receiving threatening homicidal and suicidal text messages from Osaze.   Osaze's text messages were followed by calls he made to Dr. Osagie, and a text message Osaze sent to a caseworker that he was going to die soon.

Many officers from SCPD were familiar with Osaze as there were many prior times that Dr. Osagie or other Osagie family members called SCPD (and other neighboring police departments) for assistance with his son, including several of which Osaze was threatening violence or acting violently.   These incidents included being suspected of setting his parents' home on fire, brandishing a knife in committing an armed robbery, throwing a brick through a window of his parents' home when he was evicted due to his behavior, attempting to enter another home in the early morning hours, and other dangerous and unpredictable actions as relayed by the Osagie family where they also reported, both orally and in writing, that they feared for their safety, that of their other children and the neighborhood. At least two of these occasions were in relation to a 302 involuntary mental health commitment of Osaze, and one was a mental health crisis in which SCPD officers assisted Dr. Osagie in safely securing Osaze so that Dr. Osagie could transport his son to a facility to be evaluated. Notably, when the evaluation resulted in Osaze being discharged from the hospital, officers from SCPD – including an officer currently named in this lawsuit - personally paid out of their

own pocket for a hotel room for Osaze because the Osagie family did not want him returning to their home.

SCPD Officer Kurt Stere took Dr. Osagie to Mount Nittany Medical Center Emergency Room so that he could meet with a 'Can Help' crisis worker and a 302 warrant could be completed.   Once the 302 warrant was completed and issued, it was given to SCPD to serve on Osaze.

The following day, March 20, 2019, the entire SCPD patrol was briefed regarding the ongoing issue of Osaze, and an alert was placed on the SCPD Law Incident Report about Osaze's text messages stating that he "wanted to die and made indirect threats to harm those that tried to help."   The hot sheet also referenced the 302 warrant was obtained for Osaze.

SCPD was very proactive in their search for Osaze, even though there were other investigations and calls for service happening for other citizens who also had a need for police and emergency services.

In the afternoon of March 20,2019, Osaze's mental health caseworker reported seeing him in the vicinity of a Weis Market near his apartment carrying grocery bags.   The caseworker did not attempt to engage, intervene or assist Osaze or SCPD.   Rather the caseworker contacted Can Help, another mental health service who is believed to have provided services to Osaze who likewise did not attempt to assist Osaze or SCPD; but instead called the Centre County Emergency

Dispatcher who then contacted SCPD to try to locate and make contact with Osaze.

Officer M. Jordan Pieniazek ("Ofc. Pieniazek") of SCPD, responded to the call to try to locate Oszae.   Although Ofc. Pieniazek never met Osaze prior to March 20, 2019, he was involved in prior incidents with Osaze and was familiar with Osaze throughout his twelve (12) year career with SCPD.   Ofc. Pieniazek was fully aware of the threatening text messages as reported at roll call in the morning of March 20, 2019 via the SCPD hot sheet.   He was also aware of the 302 warrant for Osaze.   Prior to making contact with Osaze, Ofc. Pieniazek requested information regarding Osaze's clothing and direction of travel because Officer Pieniazek could not locate Osaze after a search of the area.

In addition to Ofc. Pieniazek, Sgt. Hill and Lt. Robb responded to the sighting of Osaze and went to his apartment.   Upon arrival, all three officers parked their vehicles, one of which was a marked police car, on the same block as Osaze's below-ground apartment.   After developing a plan, confirming Osaze's apartment number and the 302 warrant, the three SCPD officers proceeded to Osaze's front door.   Ofc. Pieniazek proceeded to knock normally on Osaze's door and covered the peep hole so Osaze would open the door and not, among other concerns, barricade himself in the apartment (where his roommate was also located) should he look through the peephole and see a uniformed officer.   Upon knocking on the door, Osaze willingly opened it for the officers.

10

Once the door was open, Ofc. Pieniazek calmly asked Osaze if the officers could enter the apartment and speak with him.   Osaze refused the request, so Ofc. Pieniazek calmly asked Osaze to step out of the apartment and speak with him. Upon asking Osaze to step out of the apartment, Ofc. Pieniazek noticed Osaze was concealing something in his right hand.   After seeing the concealed object was a knife, Ofc. Pieniazek drew his firearm and ordered Osaze multiple times to drop the knife.   Despite Ofc. Pieniazek ordering Osaze to drop the knife multiple times, Osaze refused, took a couple of steps back, held up a knife to approximately shoulder height and yelled "shoot me, kill me."   Ofc. Pieniazek responded, "No!" to Osaze's request and yelled for Sgt. Hill to tase Osaze.   Ofc. Pieniazek stepped back as far as the confined hallway would allow and continued to order for Osaze to drop the knife.   At this point, Osaze disappeared out of sight into his apartment while Ofc. Pieniazek continued to back-up towards the stairs and ordered Osaze to drop the knife.   Within seconds, Osaze sprinted out of the apartment holding the knife at shoulder level.   Sgt. Hill attempted to tase Osaze and even though the taser probes impacted Osaze, it was ineffective in stopping Osaze's attempted deadly attack.   Ofc. Pieniazek, falling backwards into Sgt. Hill, and in fear for his life, fired his weapon three (3) to four (4) times at Osaze who was approximately two (2) to three (3) feet away – knife in hand.   After the shots and the threat ended, Lt. Robb went to obtain the medical kit from the police cruiser and called

11

out a request for medical personnel.

This incident was investigated by the Centre County District Attorney's Office, and the Pennsylvania State Police, including the Pennsylvania State Police Heritage Affairs Section, who all concluded that the actions of the SCPD officers were proper, and necessary and lawful.

As to the specific allegations as against Officer Pieniazek, Officer Pieniazek served his Country in the United States Army and was highly decorated, including being awarded the Purple Heart. He was also part of the rescue and recovery effort at the Pentagon following the attacks of September 11, 2001. He likewise served his community as a police officer with the SCPD for 12 years with many accolades and appreciation from those he served in his role as a patrol officer including several life-saving awards; served as a member of the tactical unit, the bomb squad and as a Crisis Intervention Team Instructor; and voluntarily provided counseling to military veterans and officers interacting with veterans. Officer Pieniazek successfully handled countless high stress incidents, including mental health crisis calls such as this, and received letters of appreciation and life-saving awards from those he helped.

In early 2019, Ofc. Pieniazek voluntarily sought counseling for issues in his personal life wholly unrelated to his performance as an officer. There were no concerns raised or made to Chief Gardner, Captain Fishel or any member of SCPD,

that Officer Pieniazek was unfit to perform his duties as an officer. Nevertheless, his performance as an officer was monitored both before the counseling was sought, and when Ofc. Pieniazek returned to active patrol on March 11, 2019. There were no indications that his performance or service was in any way impacted, and Ofc. Pieniazek's personal, treating professional assured Ofc. Pieniazek and the Borough that Ofc. Pieniazek was fully fit to perform his functions as an officer with no restrictions or limitations.

As to the State College training and practices, SCPD has extensive policies, and progressive training in a number of relevant areas to include policies regarding mental health encounters and use of force.   SCPD's history of successful policing and effective policies is evident in SCPD's accreditation by The Pennsylvania Chiefs of Police Association ("PCPA").   SCPD had a CIT program in place for about ten (10) years when this incident occurred and all three officers involved at Osaze's apartment had extensive training and experience in CIT, serving mental health warrants, and interactions with persons with mental health.   Since 2009, SCPD has served over 1400 mental health warrants such as this (including at least two (2) with Osaze), and handled thousands of other mental health related calls (including several with Osaze), with a number of these calls involving threats of violence and weapons, and none previously ended with a negative result and/or the need to deploy deadly force.

13

**1.2     The facts the parties <u>dispute</u> are as follows:**

All facts are in dispute unless otherwise agreed to below.

**<u>agree</u> upon are as follows:**

- Dr. Sylvester Osagie requested SCPD's assistance in locating his son, Osaze Osagie, on March 19, 2019 after receiving text messages from his son.
- Dr. Osagie shared these recent communications from Osaze with SCPD.
- SCPD Officer Kurt Stere took Dr. Osagie to MNMC Emergency Room so that he could meet with a "Can Help" crises worker and a 302 warrant could be completed. Once the 302 warrant was completed and issued, it was given to SCPD to serve on Osaze.
- Osaze's mental health caseworker reported seeing Osaze near the Weis Market carrying grocery bags.
- Defendant Pieniazek was the first to respond and drove to Osaze's apartment.
- Defendants Sgt. Hill and Lt. Robb arrived on the scene after Ofc. Pieniazek.
- Ofc. Pieniazek was junior to a Sergeant and Lieutenant.
- After having difficulty getting a hold of Osaze, Sylvester went to the SCPD to report his concerns.
- Dr. Osagie met with SCPD Officers to tell of Osaze's present situation on March 19, 2019.
- SCPD officers searched for Osaze overnight and the following morning without success.
- On the morning of March 20, Osaze's mental health caseworker reported to Can Help that he had just spotted Osaze leaving a grocery store with two grocery bags, walking in the direction of his apartment.
- Ofc. Pieniazek was standing directly in front of the apartment door and knocked on Osaze's front door and covered the peephole.
- The other officers were standing on the stairwell across from the entrance to Osaze's apartment.
- Osaze answered the door and refused to let the officers in and he refused to come in to the hallway to talk with them, as they had

14

requested.

- Ofc. Pieniazek drew his duty weapon and ordered Osaze to drop the knife. Sgt. Hill unholstered his taser.
- Osaze Osagie ran at Officer Pieniazek.
- The officers on scene reported that Osaze Osagie possessed a knife at that time.
- Sgt. Hill fired his taser at Osaze Osagie and   the taser probes made contact with him.
- Officer Pieniazek fired his weapon three (3) to four (4) times.
- All SCPD Officers receive Critical Incident Training ("CIT").
- The Borough has described its CIT program as being "designed to educate first responders about mental illness, understand the symptoms that people with mental illness experience, and develop the skills to de-escalate a crisis situation."

**1.3** **The legal issues the parties <u>dispute</u> are as follows:**

Whether the defendants used excessive force which resulted in the plaintiffs' decedent's death.

Whether defendants created a danger that resulted in plaintiffs' decedent's death.

Whether the defendant State College Borough violated the Constitution by failing to adequately supervise defendant officers and which resulted in plaintiffs' decedent's death.

Whether the defendant State College Borough maintained policies and practices that violated the Constitution and resulted in plaintiffs' decedent's death.

Whether the defendants' treatment of plaintiffs' decedent violated the Americans with Disability and Rehabilitation Acts.

Whether the defendants committed state common law torts against Osaze Osagie.

**agree upon are as follows:**

15

The Defendants acted under the color of state law.

**1.4   Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**

None.

**1.5   Identify any named parties that have not yet been served:**

None.

**1.6   Identify any additional parties that:**

**Plaintiff/Defendants intends to join:**

None.

**1.7   Identify any additional claims that:**

**Plaintiff/ Defendants intends to add:**

None.

**2.0   Disclosures**

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

**2.1   Separately for each party, list by <u>name and title/position</u> each person whose identity has been disclosed.**

**Disclosed by the Plaintiff:**

1)   SCPD Officer Kurt Stere, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

2)     SCPD Detective Kris Albright, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

3)     SCPD Officer Amanda Estep, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

4)     SCPD Officer Tlumac, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

5)     Capt. Matthew E. Wilson, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

6)     Lt. Todd Scholton, the night shift lieutenant, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

7)     Lt. Chad Hamilton, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

8)     Detective Kris Albright, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

9)     Sarah Miller, CSG Mobile Psych Rehab., 1040-4 Benner Pike, State College, PA 16801, Phone: (877) 907-7970

10)    Nicholas Mothersbaugh, Caseworker, Strawberry Fields, 3054 Enterprise Dr., State College, PA 16801, Phone: (814) 234-6023

11)    Sylvester Osagie, Plaintiff, 1012 Saxton Dr., State College, PA 16801, Phone: (814) 321-8210

12)    Chrissy Emel, Strawberry Fields, 3054 Enterprise Dr., State College, PA 16801, Phone: (814) 234-6023

13)    Megan Pieniazek, defendant Pieniazek's wife at the time of the shooting.

17

14) Jordan Pieniazek, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

15) Christian Fishel

16) Chris Hill, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

17) Keith Robb, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

18) Karrie and Mark Argiro, 1241 Edwards St., State College, PA 16801, Phone: (814) 441-2406

19) Nicholas Raia, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

20) Matt Wilson, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

21) Bernie Cantorna, Centre County District Attorney, Centre County District Attorney's Office, 106 East High Street, 3rd Floor, Bellefonte, PA 16823

22) Chief John Gardner, State College Police Department, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7150

23) Tom King, Assistant Borough Manager for Public Safety, State College Borough, 243 South Allen Street, State College, PA 16801, Phone: 814-234-7100

24) Michael Adewumi, plaintiffs' friend, 201 PO Box, Lemont, PA 16851, Phone: (814) 237-6170

**Disclosed by <u>Defendants</u>:**

In addition to any witnesses identified by Plaintiff, Defendants disclose the following:

| **Name** | **Title/Position** |
|---|---|
| M. Jordan Pieniazek | Officer/SCPD |
| Christopher Hill | Sergeant/SCPD |
| Keith Robb | Lieutenant/SCPD |
| Officer Kurt Stere | Officer/SCPD |
| Kris Albright | Detective/SCPD |
| Amanda Estep | Officer/SCPD |
| John Tlumac | Officer/SCPD |
| Matthew E. Wilson | Captain/SCPD |
| John F. Gardner | Chief/SCPD |
| Todd Scholton | Lieutenant/SCPD |
| Chad Hamilton | Lieutenant/SCPD |
| Chris Fishel | Captain/SCPD |
| TBD | Strawberry Fields Inc. |
| TBD | Centre County Emergency Dispatcher |
| TBD | Centre County District Attorney's Office |
| Kevin E. Selverian | Corporal/Pennsylvania State Police |
| William Slaton | Lieutenant/Pennsylvania State Police Heritage Affairs Section |
| TBD | Centre County Can Help Hotline |

19

Daniel Albert                    Mount Nittany Medical Center

## 3.0    Early Motions

**Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:**

| <u>Nature of Motion</u> | <u>Moving Party</u> | <u>Anticipated Filing Date</u> |
|---|---|---|
| Motion for Judgment on the Pleadings | Defendants | TBD |

## 4.0    Discovery

**4.1    Briefly describe any discovery that has been completed or is in progress:**

**By plaintiff(s):**

Plaintiff has conducted third party subpoena duces tecum discovery, provided the defendants with Rule 26(a)(1) and served defendant with initial discovery requests.

**By defendant(s):**

Defendants have issued a third-party subpoena to Pennsylvania State Police ("PSP") Custodian of Records for the investigation of the incident involving Osaze Osagie.   PSP responded to Defendants' subpoena and copies of PSP's response was provided to Plaintiff's counsel on April 7, 2021.   Defendants will issue their Fed. R. Civ. P. 26 Initial Disclosures prior to the Case Management Conference.

**4.2    Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):**

20

The parties agree that they should engage in the exchange of written discovery in the form of Interrogatories, Requests for Production, Requests for Admission, and Third-Party Subpoenas to obtain additional facts surrounding the events of March 20, 2019, identify additional witness, obtain medical records, and obtain other relevant documents in possession of the parties and non-parties

**4.3    Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects,</u> indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:**

Presently, none.

**4.4    Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:**

The parties agree to enter into a confidentiality agreement specifying that any discovery the parties agree should be confidential, will be used for the purposes of this litigation only and not subject to disclosure to persons not involved in this litigation without notice to the other party and the other party's written consent.

Defendants further request limitations on Plaintiff obtaining information related to Officer Pieniazek's personal life and marital relationship.

**4.5    For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):**

**4.5.1   depositions (excluding experts) to be taken by:**

plaintiff(s):___10___          defendant(s):___10___

**4.5.2   interrogatories to be served by:**

21

plaintiff(s):____25____          defendant(s):____25____

    **4.5.3  document production requests to be served by:**

plaintiff(s):__25____          defendant(s):_25_____

    **4.5.4  requests for admission to be served by:**

plaintiff(s):_____25___          defendant(s):_____25___

  **4.6     Discovery of Electronically Stored Information**

    **Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.**

    **Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:**

    None.

**5.0     Protective Order**

  **5.1     If entry of a protective order is sought, attach to this statement a copy of the proposed order.   Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.**

  **5.2     If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:**

Defendants, if necessary, will seek a protective order to prevent disclosure of information related to Officer Pieniazek's personal life and marital relationship.

**6.0     Scheduling**

**6.1    Final date for joining additional parties:**

      10/31/21          **Plaintiff(s)**

      10/31/21          **Defendants(s)**


**6.2    Final date for amending pleadings:**

      10/31/21          **Plaintiff(s)**
      10/31/21          **Defendants(s)**

**6.3    All fact discovery commenced in time to be completed by:**
2/1/2022

**6.4    All potentially dispositive motions should be filed by**:   4/1/2022

**6.5    Reports from retained experts due:**

**from plaintiff(s) by:** 7/1/2022

**from defendant(s) by:** 8/1/2022

**6.6    Supplementations due:**   8/15/2022

**6.7    All expert discovery commenced in time to be completed by:**
9/30/2022

**6.8    This case may be appropriate for trial in approximately:**

      ____ 240 Days from the filing of the action in this court

      ____ 365 Days from the filing of the action in this court

      X   729 Days from the filing of the action in this court

**6.9    Suggested Date for the final Pretrial Conference:**

<u>09/2022</u>(month/year)

**6.10   Trial**

      **6.10.1 Suggested Date for Trial:**

            <u>11/2022</u> (month/year)

**7.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual(s) have settlement authority.

<u>Andrew J. Shubin, Esq.</u>
Name

<u>Attorney for Plaintiff</u>
Title

<u>333 South Allen Street</u>

<u>State College, PA 16801</u>
Address

<u>(814) 867 – 3115</u>          Daytime Telephone

<u>Kathleen Yurchak, Esq.</u>
Name

<u>Attorney for Plaintiff</u>
Title

<u>328 South Atherton Street</u>

<u>State College, PA 16801</u>
Address

<u>(814) 237 – 4100</u>          Daytime Telephone

<u>Andrew G. Celli, Jr., Esq.</u>

24

Name

Attorney for Plaintiff
Title

600 Fifth Avenue at Rockefeller Center

New York, NY   10020
Address

(212) 763- 5000                    Daytime Telephone

I, David J. MacMain, Esq., hereby certify that the following individual(s) have settlement authority with consultation with clients.

David J. MacMain, Esq.

MacMain, Connell & Leinhauser, LLC

433 W. Market Street, Suite 200, West Chester, PA 19382
Address

(484) 318 - 7703  Daytime Telephone

**8.0   Alternative Dispute Resolution ("ADR")**

**8.1   Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.**

ADR procedure                    Mediation

**Date ADR to be commenced**          September 3, 2021
**Date ADR to be completed**          October 22, 2021

**8.2   If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:**

25

Not applicable.

**8.3   If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:**

Not applicable**.**

**9.0   Consent to Jurisdiction by a Magistrate Judge**

**Indicate whether all parties agree, pursuant to 28 U.S.C. ' 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:**

**All parties agree to jurisdiction by a magistrate judge of this court:**
**___ Y   _X_ N.**

**If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:**

**_____   Scranton/Wilkes-Barre**
**_____   Harrisburg**
**_____Williamsport**

**10.0   Other Matters**

**Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.**

None.

**11.0   Identification of Counsel**

**Counsel shall be registered users of the courts Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures.   Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy.   Any request for waiver of electronic filing must be filed**

**with the Clerk's Office prior to the case management conference.   The Chief Judge may grant or deny such request.**

**Identify by name, address, and telephone number lead counsel for each party.   Also please indicate ECF User status below.**

**SHUBIN LAW OFFICE**

Dated: <u>June 8, 2021</u>          By:     <u>/s/ Andrew Shubin</u>

> Andrew Shubin
> 333 South Allen Street
> State College, PA 16801
> ECF User
> *Attorney for Plaintiff*

> **EMERY CELLI BRINCKERHOFF & ABADY LLP**

> Andrew G. Celli, Jr.
> David B. Berman
> 600 Fifth Avenue at Rockefeller Center
> New York, New York 10020
> ECF User
> *Attorneys for Plaintiff*

> **STEINBACHER, GOODALL & YURCHAK**

> Kathleen Yurchak
> 328 South Atherton Street
> State College, PA 16801
> ECF User
> *Attorney for Plaintiff*

27

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>June 8, 2021</u>     By:   <u>*/s/ David J. MacMain*_____</u>
David J. MacMain
Attorney I.D. No. 59320
Matthew S. Polaha
Attorney I.D. No. 320674
433 W. Market Street, Suite 200
West Chester, PA 19382
(484) 318 - 7703
ECF Users
*Attorneys for Defendants*

**\* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.**